**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RUSTY GOLD HYDRO-TESTERS, INC. | ) | Case No. 20-12629 - MER |
| dba Catamount Oilfield Services | ) | |
| EIN: 26-2676286 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

---

## DEBTOR'S PLAN OF LIQUIDATION

---

### INTRODUCTION

This Plan of Liquidation under chapter 11 of Title 11 of the United States Code proposes to pay creditors of Rusty Gold Hydro-Testers, Inc. ("Debtor") from the net proceeds of the orderly liquidation of all of the Debtor's remaining assets, and any net proceeds of the Debtor's Avoidance Actions and other litigation claims.

This Plan provides for one class of priority claims; two classes of secured claims; one class of general unsecured claims; and one class of equity interests.   This Plan also provides for the payment of unclassified administrative and priority tax claims.

On the Effective Date, the Debtor will transfer all of the Debtor's Property to the Rust Gold Liquidating Trust, free and clear of all liens, claims, interests, and encumbrances, but subject to the terms of this Plan (including any liens, claims, and encumbrances preserved thereunder). Thereafter, the Trust, acting through the Trustee designated in the Plan, will administer and liquidate those assets and distribute the net proceeds thereof to the holders of Allowed Claims against the Debtor as provided in, and pursuant to the priorities established by this Plan.

1

All creditors and equity interest holders should refer to Articles II and III of this Plan for information regarding the precise treatment of their claims. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity interest holders will be circulated in support of this Plan.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

**ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN**

## CONTENTS

ARTICLE I DEFINITIONS AND INTERPRETATION.............................................................4

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS................................................. 11

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS
             AND INTERESTS………………………………………………………………13

ARTICLE IV COMPROMISES AND SETTLEMENTS ......................................................... 15

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
             LEASES.................................................................................................... 16

ARTICLE VI PROVISIONS GOVERNING ALLOWANCE AND
             DISALLOWANCE OF CLAIMS AND DISTRIBUTIONS........................... 17

ARTICLE VII EFFECTIVENESS OF THE PLAN .................................................................. 22

ARTICLE VIII MEANS FOR IMPLEMENTATION AND
             EXECUTION OF THE PLAN……..................................................... 23

ARTICLE IX EFFECT OF CONFIRMATION ....................................................................... 29

ARTICLE X RETENTION OF JURISDICTION .................................................................... 30

ARTICLE XI CRAMDOWN RESERVATION........................................................................ 32

ARTICLE XII OTHER PLAN PROVISIONS......................................................................... 33

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

**Definitions.** The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

**1.1. Administrative Claim.** Any right to payment constituting a cost or expense of administration of the Chapter 11 Cases allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate; any actual and necessary costs and expenses of operating the Debtor's business; any indebtedness or obligations incurred or assumed by the Debtor, as Debtor-in-possession, during the Chapter 11 Case.

**1.2. Allowed.** With reference to any Claim, (i) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with this Plan, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or under this Plan.

**1.3. Avoidance Actions.** Any actions commenced, or that may be commenced, before or after the Effective Date pursuant to Chapter 5 of the Bankruptcy Code.

**1.4. Rusty Gold Liquidating Trust Agreement.** The agreement, substantially in the form of Exhibit 1 to this Plan, as it may be subsequently modified, that governs the creation, operation, and administration of the Trust.

**1.5. Bankruptcy Code.** Title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

**1.6. Bankruptcy Court.** The United States Bankruptcy Court for the District of Colorado, having jurisdiction over this Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court

4

having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

**1.7. Bankruptcy Rules**.    The Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to this Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

**1.8. Bar Date**.    June 15, 2020 for all Claimants, including Governmental Units.

**1.9. Business Day**.    Any day other than a Saturday, a Sunday, or any other day on which banking institutions in Denver, Colorado are required or authorized to close by law or executive order.

**1.10. Cash**.    Legal tender of the United States of America.

**1.11. Causes of Action**.    Any and all actions, causes of action, derivative litigation claims, claims against directors and officers, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, other than Avoidance Actions, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise. based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of this Chapter 11 Case.

**1.12. Chapter 11 Case**.    The chapter 11 case of the Debtor.

**1.13. Claim**.    The meaning set forth in section 101(5) of the Bankruptcy Code.

**1.14. Class**. Any group of Claims or Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.15. Claim Objection Deadline**.    The first Business Day that is one hundred and twenty (120) days after the Effective Date unless such deadline is extended by the Court for good cause.

**1.16. Clint Gould**.    Majority interest owner of the Debtor and its current president. ("Gould").

**1.17. Collateral**.    Any property or interest in property of the Estate of the Debtor subject to a validly perfected lien, charge, or other encumbrance to secure the payment or

performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.18. Confirmation Date**.    The date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.19. Confirmation Hearing**.    The hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.20. Confirmation Order**.    The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.21. Debtor**.    Rusty Gold Hydro-Testers Inc. on and after the Petition Date, and when the context so requires, in its capacity as a debtor and debtor-in- possession under sections 1107 and 1108 of the Bankruptcy Code.

**1.22 Debtor' Property.**    All assets that belong to and are titled in the Debtor's name and any interests or rights the Debtor has in any property and as defined under section 541 of the Bankruptcy Code.

**1.23. Disclosure Statement**.    The disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.24. Disputed**.    With respect to any Claim or Interest, any Claim or Interest to which the Debtor, Trustee, or any other party in interest authorized by the Plan has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or that is otherwise disputed by the Debtor or Trustee in accordance with applicable law, which objection, request for estimation, or dispute has not been settled, waived, withdrawn, or determined by a Final Order.    A Claim that is Disputed by the Debtor or Trustee as to its amount only shall be deemed Allowed in the amount the Debtor or Trustee admit to be owing, if any, and Disputed as to the excess.

**1.25. Distribution**.    The distribution, in accordance with the Plan, of Cash or other Property, as the case may be, or the Cash or other Property as distributed.

**1.26 Disputed Funds**.    Money held in the Registry of the Court to which the Debtor and Pipe Suppliers claim an interest, and is the subject of the Great Western Adversary Proceeding.

**1.27. Effective Date**.    A Business Day on or after the Confirmation Date specified by the Debtor on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Section 7.2 hereof have been satisfied or waived by the Debtors.

**1.28. Entity**.    The meaning set forth in section 101(15) of the Bankruptcy Code.

**1.29. Equity Interest**.    With respect to the Debtor, any "equity security" as such term is defined in section 101(16) of the Bankruptcy Code, whether or not asserted, of any equity security holder of the Debtor, as defined in section 101(17) of the Bankruptcy Code. Equity Interest shall also include, without limitation, all stock, partnership, membership interest, warrants, options or other rights to purchase or acquire any equity interests in a Debtor or another entity

**1.30. Estate**.    The estate of the Debtor in the Chapter 11 Case as created under section 541 of the Bankruptcy Code.

**1.31. Exculpated Parties**.    The Debtor or any of their respective officers, directors, financial advisors, attorneys, employees, and representatives, acting in such capacity.

**1.32. Executory Contract**.    Any contract to which a Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

**1.33. Final Order**.    As applicable, an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, that has not been vacated or reversed, and as to which (i) no stay is in effect, (ii) the time to seek rehearing, file a notice of appeal or petition for certiorari has expired, (iii) no appeal, request for stay, petition seeking certiorari, or other review has been timely filed and is pending and (iv) any appeal that has been taken, any petition for certiorari, or motion for a new trial, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under section 502(j) of the

Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule (whether federal or state)may be but has not then been filed with respect to such order shall not cause such order not to be a Final Order.

**1.34. General Unsecured Claim**.    Any Claim against the Debtor that is (i) not an Administrative Claim, Priority Tax Claim, Secured Claim, or Priority Non-Tax Claim, or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.35. Governmental Unit**.    The meaning specified in Bankruptcy Code section 101(27).

**1.36 Great Western Adversary Proceeding**.    The adversary filed by Great Western Operating Company LLC against the Debtor and Pipe Suppliers to determine inter alia the ownership of Disputed Funds.

**1.37. Holder**.    The owner or holder of any Claim or Interest.

**1.38. Law**.    Any law, rule, regulation, order, decree or other requirement having the force of law and, where applicable, any interpretation thereof by an authority having jurisdiction with respect thereto or charged with administration thereof.

**1.39. Lien**.    A judicial lien as defined in section 101(36) of the Bankruptcy Code; a lien as defined in section 101(37) of the Bankruptcy Code; a security interest as defined in section 101(51) of the Bankruptcy Code; a statutory lien as defined in section 101(53) of the Bankruptcy Code; and any other lien, interest, charge or encumbrance.

**1.40 Liquidation Account.**    A segregated bank account where proceeds from the sale of the Debtor's Property is deposited prior to the Effective Date of the Plan and which will become Trust Cash.

**1.41. Net Proceeds.**    With respect to the sale of any property of the Trust Estate, the proceeds of such sale remaining after payment of customary closing costs, Allowed priority tax claims, brokerage fees, marketing costs, title company charges, recording fees, and the fees and expenses of the Trustee and its professionals and other agents that are attributable to such sale.

**1.42. Person**.    The meaning set forth in section 101(41) of the Bankruptcy Code.

**1.43. Petition Date**.    April 16, 2020.

**1.44 Pipe Suppliers**.     Those parties who are defendants in the Great Western Adversary Proceeding who have made a claim to the Disputed Funds.

**1.45. Plan**.     This Debtor's Plan of Liquidation, including exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.46. Priority Non-Tax Claim**.     Any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.47. Priority Tax Claim**.     Any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.48. Pro-Rata Share**.     At any time, the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims (including Disputed Claims, but excluding Disallowed Claims) in that particular Class, unless the Plan provides otherwise.

**1.49. Property**.     All property and interests in property of the Estate of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtor or acquired by the Estate as defined in Section 541 of the Bankruptcy Code.

**1.50. Sale Proceeds**. The proceeds from the sale of any assets of the Debtor prior to the Effective Date of the Plan that is deposited into the Liquidation Account.

**1.51. Schedules**.     The schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date.

**1.52. Secured Claim**.     All Allowed Claims secured by a valid, perfected, and enforceable lien that is not subject to avoidance or subordination under the Code or applicable non-bankruptcy law, but only to the extent of the value (determined in accordance with section 506(a) of the Code) of the Claimant's interest in the Debtors' interest in the specific property of the bankruptcy estate to which the lien attaches.

**1.53. Structural Steel of Colorado, LLC**.     A company currently in liquidation of which the Debtor has a 50% Equity Interest.

**1.54. Tax Code**.     Title 26 of the United States Code, as amended from time to time.

**1.55. Trust**.     The Rusty Gold Liquidating Trust, established as a grantor trust pursuant to this Plan and the Rusty Gold Liquidating Trust Agreement.

**1.56. Trustee.**     Any individual or entity designated pursuant to the Rusty Gold Liquidating Trust Agreement as the fiduciary responsible for administration of the Trust.

**1.57. Trust Assets.**     All assets of the Debtors, which shall be transferred to the Trust and held and administered by the Trustee in trust for the Holders of Allowed Claims, as provided in Article 8.

**1.58 Trust Estate.**     As defined in the Rusty Gold Liquidating Trust Agreement and contains the Debtor's Property.

**1.59. Trust Cash**. All Cash of the Trust that (i) is not subject to a lien or security interest securing a Secured Claim and shall include the Net Proceeds from the sale of the Debtor's Property and the Trust Assets.

**1.60. Unexpired Lease**.     A lease of nonresidential real or personal property to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.61 Unsecured Creditors' Committee.**     The Committee formed pursuant to Section 1102 to perform those duties pursuant Section 1103 of the Bankruptcy Code.

**Interpretation, Application of Definitions and Rules of Construction**.     Except as otherwise provided in the Plan, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan.     Wherever the context requires, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.     Terms used but not defined in the Plan shall have the meanings ascribed to such terms by the Bankruptcy Code or the Bankruptcy Rules, as the case may be.     The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a

whole and not to any particular Article, Section, or subsection in the Plan unless expressly provided otherwise.    The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize, limit, or expand the generality of the class within which such things are included.    Any references to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns. Captions and headings to articles, Sections and exhibits are inserted for convenience of reference only, are not a part of the Plan, and shall not be used to interpret the Plan.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.    Administrative Claims**.    Subject to the deadline described in Section 2.2 and other provisions herein and except to the extent the Debtor and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Debtor shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash from the Trust Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date or (ii) the first Business Day after the date that is 30 calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.    Allowed Administrative Claims shall be paid solely from the Trust Cash.

**2.2.    Administrative Claim Bar Date**.    Any Entity seeking allowance of an Administrative Claim shall prepare a final application for all fees and expenses incurred through the Effective Date, and shall file and serve such application no later than: (i) the date that is thirty (30) days after the Effective Date.    **FAILURE TO TIMELY FILE SUCH APPLICATION SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISCHARGED.**    Objections to any application filed pursuant to this subsection must be filed and served no later than twenty-one (21) days after service of such application.    As soon as practicable after the Bankruptcy Court enters an order allowing an Administrative Claim pursuant to application made under this subsection, the Trustee shall

pay the Claimant the unpaid Allowed amount of such claim in accordance with Section 2.1. Any such Administrative Claim bar date may be extended by further order of the Bankruptcy Court for cause shown or by consent of the Liquidating Trustee.

 **2.3. U. S. Trustee Fees**. Administrative Claims for U.S. Trustee Fees owing by the Debtor to the extent Allowed shall be paid in accordance with 28 U.S.C. §1930. Administrative Claims for U.S. Trustee fees due and owing under 28 U.S.C. §1930 shall be paid solely from the Trust Cash. All fees payable pursuant to 28 U.S.C. §1930 shall be paid on the Effective Date, and all fees payable pursuant 28 U.S.C. §1930 after the Effective Date shall be paid on a quarterly basis until the chapter 11 cases (as substantively consolidated under this Plan) are closed, converted, or dismissed. The Liquidating Trust shall be liable for the payment of all quarterly fees and the Trustee shall file with the Court and provide the United States Trustee with post-confirmation quarterly reports that shall include all of the Trust's disbursements for that quarter.

 **2.4. Priority Tax Claims**. Each holder of a Priority Tax Claim Allowed pursuant to § 507(a)(8) of the Code will be paid from the Trust Cash: (a) in Cash on the Effective Date or as soon as practicable; or (b) in regular installment payments over time, commencing on the first Business Day of the month following the Effective Date, and annually thereafter, in an aggregate principal amount equal to the amount of its Allowed Claim, plus interest on the unpaid portion thereof at the rate of five percent (5%) per annum from the Effective Date through the date of payment thereof; or (b) receive such other treatment as to which the Debtor (or the Trustee, after the Effective Date) and the Claimant have agreed in writing. All Allowed Priority Tax Claims shall be paid no later than five (5) years from the date of the first payment pursuant to this section, but the Trustee shall have the right to pay any Allowed Priority Tax Claim, or any unpaid portion thereof, in full at any time after the Effective Date without premium or penalty.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**3.1.   Summary and Classification of Claims and Interests**.   Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. In accordance with Section1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described above, have not been classified and are not entitled to vote on the Plan.   A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.   A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.   The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Secured Claim–Petrosmith | Unimpaired | No |
| Class 2 | Secured Claim – Ally Auto | Unimpaired | No |
| Class 3 | Priority Non-Tax Claims | Unimpaired | No |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Equity Interests | Impaired | No (deemed to reject) |

**3.2.**     **Classification and Treatment of Classified Claims**.

**(a)**     **Class 1 - Secured Claim-Petrosmith Equipment**.     Within 30 days of the Effective Date, the Debtor will surrender and relinquish its rights to certain pipe being held by Petrosmith Equipment to which they are claiming a possessory lien under Texas law.     The amount of pipe the Debtor will surrender will be the value of the pipe to satisfy PetroSmith Equipment's possessory lien.     The balance of the pipes will be retained by the Debtor and returned to become Trust Assets so as to be sold and the proceeds put into the Liquidation Trust to become Trust Cash.     The value of the pipes surrendered which equal Petrosmith Equipment's secured claim, will satisfy their secured claim.

**(b)**     **Class 2 - Secured Claim-Ally Auto**.     On or before the Effective Day, the Debtor will surrender the F-150 Truck or have Gould acquire the Ford F-150 Truck and Gould will continue payments on according to the loan documents. Gould is a guarantor on the vehicle and there is no equity in the vehicle.     This creditor has not filed a proof of claim.

**(c)**     **Class 3 - Priority Non-Tax Claims**.     Each holder of an Allowed Class Priority Non-Tax Claim shall receive Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Priority Non-Tax Claim on the Effective Date or as soon thereafter as is practicable, payable solely from the Trust Cash.     There currently does not appear to be any Priority Non-Tax Claims.

**(d)**     **Class 4 - General Unsecured Claims**. Following the expiration of the Claim Objection Deadline, as soon as the sum of all Allowed General Unsecured Claims has been determined, holders of Allowed General Unsecured Claims shall receive their Pro-Rata Share Trust Cash from time to time, at the discretion of the Trustee, after satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non- Tax Claims.

Notwithstanding any other provision of the Plan, holders of Allowed General Unsecured Claims shall not be entitled to receive any payment of Cash on account of Allowed General Unsecured Claims until the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims have received payment on account of such Allowed Claims or such Allowed Claims have been fully reserved for in accordance with the Plan, and any Disputed General Unsecured Claims have been reserved for in accordance with the Plan.    No distributions or payments shall be made in respect of General Unsecured Claims until after the expiration of the Claim Objection Deadline.

**(e)**    **Class 5 – Equity Interests**. All equity interests in the Debtor will be cancelled on the Effective Date.

### ARTICLE IV
### COMPROMISES AND SETTLEMENTS

**4.1.    Settlements Generally**.    Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim against or Interest the Debtor may have with respect to any Allowed Claim or Interest as to any distribution to be made pursuant to the Plan on account of any Allowed Claim.    The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an order of the Bankruptcy Court finding and determining that the settlements provided for in the Plan are (a) in the best interests of creditors and the Estates, (b) fair, equitable, and reasonable, (c) made in good faith, and (d) approved by the Bankruptcy Court.    All Final Orders entered by the Bankruptcy Court approving any compromises, stipulations, or settlements in the Debtor's Chapter 11 Case prior to the Effective Date shall remain in effect and shall be binding according to their terms.

**4.2.     Settlement of Litigation and Sale Transactions**.     To the extent not otherwise finally settled on or before the Effective Date, the Debtor and the Trustee shall retain all of the Estate's rights, titles, and interests, related to any settlement or compromise of pending litigation and disputes, and may, subject to compliance with the other requirements of the Plan, enter into such additional agreements to compromise any Disputed Claims.

### ARTICLE V
### TREATMENT OF EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES

**5.1.     Assumed Contracts.**     The Debtor will assume the Settlement Agreement and General Release dated July 16, 2018 regarding the liquidation of Structural Steel of Colorado, LLC so as to receive the proceeds from the liquidation of that company and which shall be assigned to the Trust.     No other executory Contracts or Unexpired Leases will be assumed and assigned to the Trust under the Plan.

**5.2.     Rejected Contracts**.     The Debtor will be conclusively deemed to have rejected all remaining executory contracts and/or unexpired leases on the Effective Date except as provided in this Plan and Final Orders of the Court.

**5.3.     Bar Date for Rejection Damage Claims.**     Any and all proofs of claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed within thirty (30) days after the Effective Date.     Any proof of Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not timely filed shall be disallowed automatically and forever barred, estopped and enjoined from assertion and shall not be enforceable against the Debtor, the Estate, or the Trust or their respective Property or Trust Assets, without the need for any objection or any further notice to or action, order or approval of the Bankruptcy Court, and any Claim arising out the rejection of the Executory Contract or Unexpired Lease or shall be deemed fully satisfied and released notwithstanding anything in the Schedules or a proof of claim to the contrary.     All Allowed Claims arising

16

from the rejection of an Unexpired Lease or Executory Contract shall be treated as Class 4 General Unsecured Claims for purposes of a distribution pursuant to the Plan.

## ARTICLE VI
### PROVISIONS GOVERNING ALLOWANCE AND DISALLOWANCE OF CLAIMS AND DISTRIBUTIONS

**6.1.    Disallowance of Claims**.    Except as otherwise agreed by the Trustee, any and all proofs of Claim filed after the Bar Date shall be deemed disallowed as of the Effective Date without any further notice to, or action, order or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late proof of Claim is deemed timely filed by a Final Order of the Bankruptcy Court. Nothing herein shall in any way alter, impair, or abridge the legal effect of the Bar Date or the rights of the Debtor or the Trustee to object to Claims (except to the extent such claims are Allowed Claims pursuant to a Final Order of the Court) on the grounds that they are time barred or otherwise subject to disallowance, subordination or modification.

**6.2.    Claim Objections**. Objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made pursuant to the Code, the Bankruptcy Rules, or any applicable non-bankruptcy law no later than the Claim Objection Deadline.    The Debtor, the Trustee, and any other party-in-interest shall have full right, power and authority to investigate and, if necessary, object to claims prior to the Claim Objection Deadline.    The Claim Objection Deadline may be extended by further order of the Court.

**6.3.    Litigation and Settlement of Claims**.    Subject to the terms of the Plan, objections to Claims may be litigated to judgment, settled, or withdrawn.    Only the Trustee shall have the authority to settle claims.    With respect to any settlement of a General Unsecured Claim involving an amount of $20,000 or less, no notice to creditors, or approval by the Bankruptcy Court, of the settlement will be required.    With respect to any General Unsecured claim involving an amount greater than $20,000, or any objection to any Administrative Claims, Priority Tax Claims, or Priority Non-Tax Claims, settlement by the

17

Trustee of any objection to any claim shall be permitted on the fourteenth (14th) day after notice of the settlement has been provided by the Trustee to the objector, and the holder of the claim.   If on or before the objection deadline no written objection to the proposed settlement is submitted to the Trustee, such settlement shall be conclusively approved.   If a written objection to the proposed settlement is submitted before the objection deadline, the Trustee and the objector shall confer to reach a consensual resolution of the dispute.   If no resolution is reached within fourteen (14) days after the Trustee's receipt of the objection, the Trustee shall file an application with the Bankruptcy Court to approve the settlement and the settlement shall be subject to approval by the Bankruptcy Court (in accordance with the standards developed under Bankruptcy Rule 9019) and upon notice to the objecting party.

**6.4.   Manner of Distributions**.   Distributions in respect of General Unsecured Claims shall be made solely from the Trust Estate whenever reasonably ascertainable in the sole opinion of the Trustee, and solely to the extent of Trust Cash available at the time. Distributions in respect of other Claims shall be made at the time and in the manner called for under the Plan.   Distributions to a Holder of an Allowed Claim will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank.   Any Holder of an Allowed Claim that wishes to receive a cash payment by wire transfer shall provide wire instructions to the Trustee. In any such case, the Trustee shall make the Cash payment(s) by wire transfer in accordance with the wire instructions, provided, that, the costs of such wire transfer shall be deducted from such entity's distribution.   Distributions shall be made: (i) at the addresses set forth in the proofs of claims filed by claimants (or the last known addresses of such claimants if no proof of claim is filed or if the Trustee has been notified of a change of address); (ii) at the addresses set forth in written notices of address change delivered to the Trustee after the date of any related proof of claim; or (iii) at the addresses reflected in the Schedules if no proof of claim has been filed and the Trustee has not received a written notice of change of address.

**6.5.   No Distribution Pending Allowance**.   Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution

18

provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

 **6.6.** **Estimation of Claims**. For purposes of making distributions provided for under the Plan, all Disputed Claims may be estimated by the Trustee at an amount equal to (i) such lesser amount that is agreed to by the holder of such claim, (ii) the amount claimed if the Court has not made an estimation of such claim or the holder of such claim has not agreed to a lesser amount, or (iii) the amount, if any, determined by the Court pursuant to § 502(c) of the Code as an estimate for distribution purposes.   In any event, the estimated amount shall be the maximum amount of the claim for distribution purposes under this Plan and any order of the Bankruptcy Court estimating the claim shall also set the maximum amount of the claim if it becomes an Allowed Claim.   The Trustee shall create a Disputed Claims Reserve sufficient to pay estimated claims when and if they become Allowed Claims. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any claim so estimated until such claim is an Allowed Claim.

 **6.7.** **Unclaimed Distributions**.

  **(a) <u>Undeliverable Distributions</u>**.   If any distribution to any Holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Trustee is notified of such Holder's then-current address.   If any Holder of an Allowed Claim does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder of an Allowed Claim entitled thereto, such unclaimed property shall be deemed to be forfeited by such Holder, whereupon all right, title and interest in and to the unclaimed property shall be held by the Trustee and any Holder thereof shall be forever barred, estopped and enjoined from asserting any such Claim against the Debtor, the Trust Estate, and the Trustee.   In such cases, with respect to any distribution made from Trust Cash, the Trust Cash that was to be distributed will become Property of the Trust Estate free and clear of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary and shall be distributed in accordance with the terms of the Plan.   Nothing contained in the Plan or

otherwise shall require any of the Debtor or the Trustee to attempt to locate any Holder of an Allowed Claim.

(b) **Time Bar to Cash Payments**.    If the event that any distribution to any Holder of an Allowed Claim made by check is not cashed within sixty (60) days after issuance thereof, a stop payment order shall be given with respect to such check rendering the check null and void. Requests for reissuance of any check subject to a stop payment order shall be made in writing to the Trustee by the Holder of such Allowed Claim to whom such check originally was issued.    Any claim in respect of such voided check shall be made on or before thirty (30) days after the sixty (60) day period following the date of issuance of such check. If any Holder of an Allowed Claim does not assert a claim pursuant to this Plan for reissuance of a voided check within such period, the amount represented by such voided check shall be deemed to be forfeited by such Holder, and any Holder thereof shall be forever barred, estopped and enjoined from asserting any such Claim against the Debtor, the Trust Estate, and the Trustee.    In such cases; (i) with respect to any distribution made from Trust Cash, the Trust Cash that was to be distributed will become Property of the Trust Estate free and clear of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary and shall be distributed in accordance with the terms of the Plan.

6.8.    **Withholding Taxes**.    The Trustee shall not be required to withhold taxes or comply with any applicable reporting requirements.    The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions.    If requested by the recipient of a Distribution, the Trustee will issue an IRS Form1099.    Notwithstanding any other provision of the Plan, each Entity receiving a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other tax obligations.

6.9.    **Fractional Cents**.    Any other provision of the Plan to the contrary notwithstanding, no payment of fractions of cents will be made.    Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

**6.10. De Minimis Distributions**.    The Trustee shall not be required to make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed General Unsecured Claim.    To the extent that any interim distribution is not paid on an Allowed General Unsecured Claim on the grounds that it amounts to less than twenty-five dollars ($25.00), the amount of such withheld distribution shall be reserved for addition to any future distribution and may be made at that time if the total distribution is at least twenty five dollars ($25.00), or as the final distribution on such Allowed General Unsecured Claim.

**6.11. Setoffs**.    Nothing in this Plan shall expand or enhance a Creditor's rights of setoff and recoupment, which shall be determined as of the applicable Petition Date. Nothing in this Plan is intended to, or shall be interpreted to, approve any Creditor's effectuation of a post-petition setoff or recoupment without the consent of the Debtor or the Trustee unless prior Bankruptcy Court approval has been obtained.    Except as otherwise provided for herein, with respect to Causes of Action or Avoidance Actions released by or on behalf of the Estates pursuant to the Plan and the Confirmation Order, the Trustee may, but shall not be required to, exercise its right setoff and recoupment, pursuant to sections 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, Causes of Action, or Avoidance Action of any nature whatsoever that the Trust Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of a Claim shall constitute a waiver or release by the Debtor, the Trustee or the Trust Estate of any Claim it may have against the Creditor.

## ARTICLE VII
## EFFECTIVENESS OF THE PLAN

**7.1.    Condition Precedent to Confirmation of Plan**.    The following are conditions precedent to the confirmation of the Plan:

(a) The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Debtor.

(b) All exhibits to the Plan are in the form and substance reasonably satisfactory to the Debtor.

**7.2.    Conditions Precedent to Effective Date**.    The following are conditions precedent to the Effective Date of the Plan:

(a) The Confirmation Order shall have become a Final Order;

(b) The Confirmation Order, in form and substance reasonably satisfactory to the Debtor has been entered and is not stayed;

(c) All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, inform and substance satisfactory to the Debtor;

(d) All authorizations, consents and regulatory approvals, if any, required by the Debtor in connection with the consummation of the Plan are obtained and not revoked;

(e) the Trustee shall have accepted appointment as Trustee for the Trust; and

(f) Any modifications to the Plan are in a form acceptable to the Debtor.

**7.3.    Waiver of Conditions**.    The Debtor, in writing, may at any time, without notice or authorization of the Bankruptcy Court, waive one or more of the conditions set forth in Sections 7.1 and 7.2 of the Plan.

**7.4.    Satisfaction of Conditions**.    Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously.    If the Debtor decide that one of the conditions precedent set forth in Section 7.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

**7.5.    Notice of Effective Date**.    On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtor shall file with the Bankruptcy Court a "Notice of Effective Date", which notice shall constitute appropriate and adequate notice that the Plan has become effective.    Failure to timely file the notice shall not in any way affect the effectiveness of the Plan.

**7.6.    Request for Waiver of Stay of Confirmation Order**.    The Plan shall serve as a motion seeking a waiver of the stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e).    Any objection to this request for waiver shall be filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules or as otherwise ordered by the Bankruptcy Court.    In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

**7.7.    Sale Transactions**.    Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed to modify or otherwise affect the terms and conditions of any sale which required Court approval under Section 363.    In the event of a conflict between the Plan, and any Court approved sale, the terms of the Court approved sale shall control.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**8.1.    Basic Summary.**    The Debtor, through the Rusty Gold Liquidation Trust, will liquidate its assets with the proceeds used to fund the payments under this Plan.    A Trustee will be appointed to assist in the sale, perform those duties set forth in the Rust Gold Liquidation Trust Agreement, and direct the payments to creditors as required under this Plan.    Gould will assist the Trustee in the sale of the assets given his knowledge of the assets to be sold, knowledge of the market, and likely purchasers in the pipe business and companies needing pipes.    The Trust Assets to be sold and accounts collected will provide the money to fund this Plan which include (but is not limited to) pipe inventory, vehicles and equipment, collection of the Debtor's interest in the liquidation of Structural Steel of Colorado LLC, sale of real property, obtaining the Debtor's interest in the Disputed Fund

deposited in the Court's registry, recovery of accounts receivable, Avoidance Actions, and Causes of Actions.

**8.2.    Vesting of Assets in Trust and Abandonment on the Effective Date.**    As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, the Debtor shall transfer and assign all of its rights, title, and interests in and to all of the Debtor's Property, which shall automatically vest in the Trust free and clear of all Claims, Liens, encumbrances, charges, Equity Interests, and other interests, including any successor liability claims, and except for such Liens, charges and encumbrances set forth in the Plan**.**

**8.3.    Establishment of the Trust.** The Trust shall be established in accordance with the Plan and the Rusty Gold Liquidation Trust Agreement.    For U.S. Federal income tax purposes, all parties shall treat the Debtor's transfer of the Debtor's Property to the Trust as a transfer of such assets by the Debtor to the holders of Allowed Claims under the Plan, and followed by a transfer by such holders to the Trust.    On and after the Effective Date, the Trust may operate and may use, acquire, and dispose of assets without supervision or approval by the Bankruptcy Court, provided, however, that the Trust shall be entitled to have disputes resolved by the Bankruptcy Court in matters for which the Bankruptcy Court has retained jurisdiction.    Without any further action of any Entity, the Rusty Gold Liquidation Trust Agreement shall become effective on the Effective Date.    The terms of this Plan and the Rusty Gold Liquidation Trust Agreement shall govern the operations of the Trust.

**8.4.    The Trustee.**    The Debtor has selected Simon E. Rodriguez as the Trustee given his experience as a Chapter 7 Trustee and a respected member of the Bankruptcy Bar. The Trustee shall be retained as the sole Trustee of the Trust for purposes of executing this Plan until all Trust Assets have been administered and Trust Cash has been distributed as provided herein and in the Rusty Gold Liquidation Trust Agreement.    The Trustee shall be deemed to have been appointed as the Debtor's representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

**8.5.    Liquidation of Non-Cash Assets.**    With respect to non-cash assets of the Trust Estate, the Trustee shall have the duty to liquidate and convert to cash all non-cash

portions of the Trust Estate, and distribute the proceeds thereof in accordance with the provisions of this Plan.     The Trustee, with the assistance of Gould, shall exercise reasonable business judgment in liquidating all non-cash assets and shall attempt to liquidate the assets in an orderly manner and with a view towards maximizing the net proceeds thereof.     The Trustee, shall have the authority (as provided in the Rusty Gold Liquidation Trust Agreement) to abandon and not administer any non-cash asset of the Trust Estate that the Trustee determines in the exercise of reasonable business judgment to be burdensome to the Trust Estate or of inconsequential value and benefit to the Trust Estate.

**8.6.    Avoidance Actions; Litigation Claims.**    The Trustee shall be vested with standing to pursue any and all Causes of Action, Avoidance Actions, and litigation claims to recover assets and money on behalf of the Trust Estate in accordance with the following: (a) Pursuant to Code §1123(b)(3)(B), and except for claims that are expressly waived or released by the Plan, the Trust Estate and the Trustee shall be assigned and subrogated to each and every claim, right, demand or cause of action whatsoever of the Debtor, and their bankruptcy estates (whether pre- or post-petition) (all of which claims, rights, demands and causes of action are hereby preserved), including, without limitation, actions for the avoidance and recovery pursuant to Code §550 of transfers avoidable by reason of Code §§ 544, 545, 547, 548, 549, 553(b), and may commence or continue in any appropriate court or tribunal, including the Bankruptcy Court, legal causes of action for collection of the same. (b) The Trustee shall exercise the authority granted by the Plan to investigate and pursue on behalf of the Trust Estate collection of any actions and claims, accounts receivable, and related actions, including the authority to compromise and settle any of such claims or actions.     No claimant or other party-in-interest shall have any entitlement, right or claim against the Trustee, or any of its agents, representatives, or employees, with respect to any collection, or failure to collect, any such actions or claims for the benefit of the Trust Estate. (c) Any recoveries (net of fees, costs and expenses) made on account of Avoidance Actions, Causes of Action, and other litigation Claims shall be deposited in the Trust Estate.     The recoveries shall be considered additions to the Trust Cash.

**8.7.    Trustee's Employment of Professionals.**    The Trustee, may retain such legal counsel, accountants, advisors, professionals, or other persons as deemed necessary by the Trustee to assist the Trustee in fulfilling its duties hereunder or in exercising any of the Trustee's rights and powers hereunder (regardless of whether any such person is related to the Trustee or is otherwise affiliated with the Trustee in any manner, except as expressly provided herein).    The Trustee anticipates employing the services of Gould and others to assist in the liquidation of asset.    To the extent that the Trustee is licensed and capable of doing so, the Trustee may serve as its own attorney, accountant and/or tax specialist in conjunction with any of the rights, powers and duties of the Trustee under this Plan.

**8.8.    Compensation and Reimbursement of Trustee and Professionals.**    The Trustee or any professionals or any person retained by the Trustee pursuant to this Plan shall be entitled to reasonable compensation for services rendered at a rate reflecting actual time billed by such Trustee, professional or person on an hourly basis, at the standard billing rates for such services in effect at the time of service or such other rate of compensation that is reasonable (and shall also be entitled to reimbursement for reasonable, out-of-pocket expenses incurred in connection with the provision of such services); provided, however, that the Trustee shall provide to the Chairman of the Unsecured Creditors' Committee with at least five (5) business days advanced notice before paying any compensation to any Trust professionals.    Any compensation paid to the Trustee or any other Trust professionals may only be paid from Trust Cash.

**8.9    Status Reports.**    The Trustee shall prepare and deliver to the Chairman of the Unsecured Creditors' Committee a status report of the progress on initiating the terms of this Plan including status of liquidation of assets, settlement of claims, distribution to creditors and any other matter regarding the consummation of this Plan.    The status report will be prepared every 90 days beginning on the Effective Date and continue until such time as the Plan has been executed and all distributions have been made, or Trust is terminated and the Trustee is discharged from his duties.

**8.10.   No Rights In Assets.**   The assets held by the Trust Estate shall be held by the Trustee in trust for the benefit of the Holders of Claims.   Consequently, the Plan does not create for, or give to, any claimant any direct interest or property right to any of the assets held by the Trust Estate, and no Holder of any Claim shall have any rights against any such assets until a distribution is made or required to be made to such Holder under the Plan.

**8.11.   Tax Treatment.**   The Trust is intended to be treated, for federal income tax purposes, in part as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d), for the benefit of the Holders of Allowed Claims, and otherwise as one or more disputed ownership funds within the meaning of Treasury Regulations section 1.468B-9(b)(1), as more specifically provided for under the Rusty Gold Trust Agreement. Accordingly, for all federal income tax purposes the transfer of Trust Assets to the Trust will be treated as a transfer of the Trust Assets directly from the Debtor to the Holders of Allowed Claims and to the reserves established pursuant to the Plan, followed by the transfer of such Trust Assets.   The Holders of Allowed Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Trust Assets and any earnings thereon.   The Trustee will be required by the Rusty Gold Liquidating Trust Agreement to file federal tax returns for the Trust as a grantor trust with respect to the portion of the Trust owned by Holders of Allowed Claims and as one or more disputed ownership funds with respect the portion of the Trust allocable to the claim reserves established hereunder, and any income of the Trust will be treated as subject to tax on a current basis.   Taxes on distributions made by the Trust will be the responsibility of the Holders of Allowed Claims.   In addition, the Rusty Gold Liquidating Trust Agreement will require consistent valuation by the Trustee and the Beneficiaries (as defined in the Rusty Gold Liquidating Trust Agreement), for all federal income tax purposes, of any property transferred to the Trust.   The Rusty Gold Liquidating Trust Agreement will provide that termination of the trust will occur no later than five (5) years after the Effective Date, unless before termination the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Trust to complete its Claims resolution and liquidating purpose.   The Rusty Gold Liquidating Trust Agreement also will limit the investment

powers of the Trustee in accordance with IRS Rev. Proc. 94-45 and will require the Trust to distribute at least annually to the Beneficiaries (as such may have been determined at such time) its net income, except for amounts retained as reasonably necessary to maintain the value of the Trust Assets or to meet Claims and contingent liabilities (including Disputed Claims).

**8.12.  Limitation on Liability of Trustee.**    Subject to applicable law, the Trustee shall not be liable for any act it may do or omit to do as Trustee hereunder while acting in good faith and in the exercise of its reasonable judgment; nor shall the Trustee be liable in any event except for its own gross negligence or willful misconduct.    The foregoing limitation on liability shall apply equally to the agents and/or employees of the Trustee acting on behalf of the Trustee in the fulfillment of the Trustee's duties hereunder.

**8.13.  Funding of the Plan.**    As of the date of this Plan, the Debtor projects that the Trust Estate will consist of the following assets, with the associated estimated values before any cost of sale of the items to be liquidated:

| Assets | Estimated Value |
|---|---|
| Cash from Liquidation Account | $600,000 |
| Disputed Funds | $2,251,689 to $5,880,475 |
| Inventory | $675,000 |
| Equipment | $200,000 |
| Real Property | $1,800,000 |
| Structural Steel Proceeds | $200,000 |
| Avoidance Actions and other litigation | $200,000 |
| TOTAL: | $5,926,689 to $9,555,475 |

**8.14.  Preservation/Vesting of Rights of Action**.    Except as expressly released or otherwise provided under the Plan, pursuant to Bankruptcy Code section 1123(b), the Trust Estate shall be vested on the Effective Date with and shall retain and may enforce any and all Avoidance Actions and Causes of Action that the Debtor or their Estates may hold or have against any entity, including (i) the Avoidance Actions, (ii) any legal or equitable rights to subordinate and/or disallow Claims, (iii) any derivative Causes of Action that may be brought by such Debtor; and (iv) any and all other Causes of Action of any kind or nature of such Debtor or its Estate that may exist as a consequence of applicable bankruptcy law or

non-bankruptcy law (collectively, the "Retained Actions").    Except as expressly released or otherwise provided pursuant to the Plan, or agreed by the Trustee in writing, upon the Effective Date, the Trust Estate and only the Trust Estate shall have standing to assert the Retained Actions and the Trustee may prosecute Retained Actions, abandon Retained Actions, settle Retained Actions, dispose of Retained Actions, or assign the right to enforce designated Retained Actions in its sole discretion.    Notwithstanding the foregoing, the Retained Actions shall not include any Claim, right or cause of action released pursuant to the Plan.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.1.**    **Vesting of Assets**.    Except as otherwise explicitly provided in the Plan, on the Effective Date, all Trust Assets or interest in Trust Assets owned by the Debtor's Estate shall revest in the Trust Estate free and clear of all Claims, Liens, charges, encumbrances, rights, and interests of creditors and equity security holders.    As of and following the Effective Date, the Trustee may administer the Trust Estate under the terms and conditions of the Rusty Gold Liquidating Trust Agreement, as amended or supplemented from time to time, without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**9.2.**    **No Discharge of the Debtor.**    In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in these bankruptcy cases.

**9.3.**    **Injunction Against Interference with Plan**.    Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**9.4.    Exculpation**.    Except as otherwise specifically provided in the Plan, exhibits, or related documents and to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Holder of a Claim against or Interest in the Debtor, or any other party-in-interest or any of their representatives, or any of their successors and assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Cases, the pursuit of confirmation of this Plan, or the consummation of this Plan.   No Holder of a Claim against or Interest in the Debtor, or any other party-in-interest, including their respective representatives, successors, or assigns shall have any right of action against the Exculpated Parties for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Cases, or the pursuit of confirmation of this Plan provided, however, that the foregoing provisions of Section 9.4 shall have no effect on the liability of any Exculpated Party that would otherwise result from (a) the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.   Nothing in this Section 9.4 shall be deemed to exculpate or release any Exculpated Party for any acts, omissions, transactions, events or other occurrences taking place after the Confirmation Date.   Nothing in this Section 9.4 shall be deemed to exculpate or release any Exculpated Party to the extent that such exculpation or release is prohibited by Rule 1.8(h)(1) of the Colorado Rules of Professional Conduct.

## ARTICLE X
### RETENTION OF JURISDICTION

**10.1.   Jurisdiction of Bankruptcy Court**.    The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To hear and determine motions for the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases and the allowance of Claims resulting therefrom.

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date; including, without limitation, any proceeding to recover a Cause of Action and Avoidance Actions;

(c) To hear, adjudicate, determine and allocate the value(s) of any property owned or sold by the Estate or Trust and any liens asserted against such property; including, without limitation the Disputed Funds;

(d) To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f) To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan the Confirmation Order, or any other order of the Bankruptcy Court;

(h) To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order,

any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(k) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust or reserve established in furtherance of the Plan);

(m) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(n) To hear and determine any pending adversary proceedings as of the Effective Date;

(o) To hear and determine matters concerning or impacting the administration of the Trust and the liquidation of the assets of the Trust; and

(p) To enter a final decree closing the Chapter 11 Cases.


### ARTICLE XI
### CRAMDOWN RESERVATION

**11.1   Nonconsensual Confirmation**.    If any impaired class fails to accept the Plan by the requisite statutory majorities provided in sections 1126(c) and 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code and/or amend the Plan to the extent necessary to obtain entry of a confirmation order.

## ARTICLE XII
## OTHER PLAN PROVISIONS

**12.1.   Substantial Consummation**.    On the Effective Date or as soon thereafter as practicable, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.2.   Exemption from Transfer Taxes**.    Subject to orders entered by the Bankruptcy Court prior to the Confirmation Date authorizing certain sales of real property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**12.3.   Payment of Statutory Fees**.    On the Effective Date, and thereafter as may be required, the Trustee shall cause to be paid from the Trust Cash all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

**12.4.   Modification of Plan**.    The Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.    In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Interests under the Plan, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.    Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of

holders of Claims or Interests; and (ii) the Debtor provide at least three (3) business days notice of any such proposed changes to the Chairman of the Unsecured Creditors' Committee.

**12.5. Revocation or Withdrawal of Plan**.    The Debtor reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.    If the Debtor take such action, the Plan shall be deemed null and void.

**12.6. Courts of Competent Jurisdiction**.    If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**12.7. Governing Law**.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Colorado shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and shall govern corporate or other governance matters with respect to that Debtor, in either case without giving effect to the principles of conflicts of law thereof.

**12.8. Exhibits**.    All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**12.9 Successors and Assigns**.    All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

**12.10. Time**.    In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.11. Severability.**    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**12.12. Captions.**    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**12.13 Notices**.    All notices, requests and demands to or upon the Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtor:
BUECHLER LAW OFFICE, L.**L.C.**
David M. Rich
999 18th Street, Suite 1230-S
Denver, Colorado 80202
720-381-0045 / 720-381-0382 FAX
Dave@KJBlawoffice.com


If to the Trustee:
Simon E Rodriguez
PO Box 36324
Denver, CO 80236
303-969-9100
Lawyercolo@aol.com


[Rest of page intentionally left blank.]

35

**12.14. Entire Agreement**.    Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.


Dated October 26, 2020

Rusty Gold Hydro-Testers, Inc.


By: */s/ Clint Gould*
         Clint Gould, President

BUECHLER LAW OFFICE, L.**L.C.**
David M. Rich #15211
999 18th Street, Suite 1230-S
Denver, Colorado 80202
720-381-0045 / 720-381-0382 FAX
Dave@KJBlawoffice.com

*Attorneys for Rusty Gold Hydro-Testers, Inc.*

**EXHIBIT 1**

**Rusty Gold Liquidating Trust Agreement**

[TO BE PROVIDED]